UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JESUS GOMEZ,

    Plaintiff,

v.

ROGER WALKER, *et al.*,

    Defendants.

Case No. 05-cv-590-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 34) of Magistrate Judge Clifford J. Proud recommending that the Court grant the motion for summary judgment filed by defendant Faisal Ahmed ("Ahmed") (Doc. 27). Plaintiff Jesus Gomez ("Gomez") has objected to the report (Doc. 42).

### I.    Report and Recommendation Review Standard

After reviewing a magistrate judge's report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

### II.    Report and Objection

This case is about the medical treatment Gomez received from Ahmed, a doctor, while he was incarcerated at Menard Correctional Center ("Menard") from June 2003, when he was transferred to Menard, to December 2004, when he was transferred out of Menard. Prior to arriving at Menard, Gomez was injured in a car accident and required an ileostomy and a

colostomy. According to Gomez, the colostomy was designed to be temporary, but Gomez was incarcerated before his doctor could complete the reversal procedure.

The Report noted that while incarcerated, Gomez began to experience problems, including nausea, vomiting, pain, discomfort, inflammation, infection and discharge at the colostomy site. Other medical staff at Illinois Department of Corrections ("IDOC") institutions had requested the surgical reversal procedure in 2002, but the request had been denied by Wexford Health Sources, Inc. ("Wexford"), the contract healthcare provider for IDOC.

In August 2003 when first treated by Ahmed, Gomez complained of bleeding, pain, irritation, nausea, vomiting, bloating and a herniation at the stoma site. Ahmed noted Wexford's 2002 refusal to approve the earlier recommendation for reversal of the colostomy and told Gomez that his colostomy would not be reversed while he was incarcerated. Gomez asked Ahmed for the reversal procedure, but Ahmed observed that the current measures were functioning properly and that Gomez had been stable for the past two years. Based on that information, Ahmed decided to manage the situation conservatively short of surgery until surgery became medically necessary.

In June 2004, Gomez complained of bleeding, bloating and pulling around the stoma and was prescribed Maalox by a nurse practitioner. Other medical personnel also saw Gomez for problems with his colostomy and ileostomy site. Gomez also complained that the colostomy was malfunctioning, but when Ahmed examined him in August and November 2004, he found it was functioning properly. In October 2004, Ahmed noticed that another prison doctor's October 2004 referral of Gomez for surgery had been denied pending further review by Wexford's medical director. Ahmed himself saw no need for surgery because there was no clinically significant deterioration of Gomez's condition. In December 2004, Gomez was transferred to a

new institution where Ahmed no longer cared for him. Doctors at that institution recommended a surgery referral in January and October 2005, but that request was rejected. Gomez's surgery was eventually performed in 2007.

The Report concluded that no reasonable jury could find that Ahmed's treatment of Gomez reflected deliberate indifference to a serious medical need, that is, that Ahmed knew of and disregarded Gomez's medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The evidence, viewed in Gomez's favor, reflects simply that Gomez and Ahmed disagreed about the appropriate course of treatment. When Gomez told Ahmed of a problem, Ahmed evaluated it and chose a conservative course of treatment while Gomez desired a more aggressive one.

Gomez objects, arguing that a reasonable jury could find based on the evidence viewed in his favor that he had a serious medical need for surgery to alleviate his problems with his colostomy and ileostomy and that Ahmed was deliberately indifferent to it. He points to other doctors' recommendations for consultation with a surgeon during and around the time Ahmed was treating Gomez. The Court reviews the matter *de novo*.

**III. Analysis**

The Eighth Amendment's prohibition on the unnecessary and wanton infliction of pain forbids deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *Zentmyer v. Kendall Co.*, 220 F.3d 805, 810 (7th Cir. 2000). To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an objectively serious medical need and (2) that the official knew that the medical need was serious but disregarded it. *Johnson*, 444 F.3d at 584; *Zentmyer*, 220 F.3d at 810.

An objectively serious injury or medical need is "one that has been diagnosed by a

3

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer*, 220 F.3d at 810 (quotations omitted). A serious medical condition need not be life-threatening, but it should constitute "a denial of the minimal civilized measure of life's necessities." *Johnson*, 444 F.3d at 585 (internal quotations omitted).

An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need."). "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (citing *Estelle*, 429 U.S. at 104-05). It can also arise where a treatment decision was a "substantial departure from accepted professional judgment, practice, or standards." *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). However, a mere difference of opinion by medical professionals as to the way a medical problem should be treated, while it may lead to an inference of negligence, does not give rise to an inference of deliberate indifference. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Pardue*, 94 F.3d at 261. The prisoner must show that the defendant's conduct was intentional or criminally reckless; neither simple nor gross negligence is sufficient to establish deliberate indifference. *Johnson*, 444 F.3d at 585; *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991).

A reasonable jury could find that Gomez's medical needs were serious. Viewing all the evidence in Gomez's favor, which the Court must at the summary judgment stage, it is clear that he had horrible and recurring problems associated with his colostomy and ileostomy including

4

bleeding, pain, cramping, redness, rash, irritation, nausea, vomiting, bloating and herniation. Gomez also states that he had an obstruction on several occasions, although those obstructions cleared up on their own without medical intervention. Even Ahmed agrees in his affidavit that an obstruction would be a serious problem mandating surgery. While none of those medical problems were life-threatening, a jury could certainly find that they were serious medical needs.

As for Ahmed's alleged deliberate indifference, this is a close call. The evidence shows that Ahmed responded, albeit conservatively, whenever Gomez complained to him about problems with his colostomy or ileostomy. However, the Court thinks a reasonable jury could find Ahmed's failure to seek a surgical consultation was a substantial departure from accepted professional judgment when it considers that at least five other doctors who treated Gomez during or around Ahmed's involvement (an unnamed doctor in 2002, Dr. Krieg in October 2004, Dr. Kumar in January 2005, Dr. Svobodo in October 2005; and an unnamed doctor in 2007) believed a surgery consultation was called for. Although Ahmed responded to the immediate symptoms Gomez presented on each occasion, a reasonable jury could find that his failure to recommend a more permanent resolution to those inevitably recurring problems exhibited deliberate indifference to those problems. This, in combination with Ahmed's statement in August 2003 implying that Gomez's colostomy would not be surgically reversed while he was in IDOC custody no matter how bad his problems became, could lead a reasonable person to believe that Ahmed would not recommend surgery even if it was medically necessary. Based on these facts, the Court believes a reasonable jury could find Ahmed deliberately indifferent to Gomez's serious medical needs.

## IV. Conclusion

Because a reasonable jury could find Ahmed was deliberately indifferent to Gomez's

5

serious medical needs in violation of the Eighth Amendment, the Court **REJECTS** the Report (Doc. 34) and **DENIES** Ahmed's motion for summary judgment (Doc. 27). This matter, including the pending motion for appointment of counsel (Doc. 41) is **REFERRED** to Magistrate Judge Clifford J. Proud pursuant to Local Rule 72.1(a)(2) for further pre-trial proceedings. Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS SO ORDERED.**
**DATED:  January 7, 2009**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**